Shannon Leininger, WSB #8-6932
Assistant Attorney General
Travis Jordan, WSB #7-5721
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
shannon.leininger@wyo.gov
travis.jordan@wyo.gov

*Attorneys for Intervenor-Defendant State of Wyoming*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE WILDERNESS SOCIETY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEBRA HAALAND, *et al.,* <br><br> Defendants, <br><br> and <br><br> STATE OF WYOMING, <br><br> Intervenor-Defendant. | Case No.: 1:22-cv-01871-CRC <br><br> **STATE OF WYOMING'S BRIEF ON REMEDY** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

      A.     The Bureau can substantiate its decision on remand ................................. 2

      B.     Vacatur would result in disruptive impacts ................................................ 5

CONCLUSION .................................................................................................................................. 7

CERTIFICATE OF SERVICE .............................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Savage*,
  375 F.Supp.3d 1152 (D. Mont. 2019) .................................................................................. 5

*Am. Great Lakes Ports Ass'n v. Schultz*,
  962 F.3d 510 (D.C. Cir. 2020) ............................................................................................. 2

*Bauer v. DeVos*,
  332 F.Supp.3d 181 (D.D.C. 2018) ....................................................................................... 4

*Dine Citizens Against Ruining Our Env't v. Jewell*,
  No. 15-cv-0209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) ............................................ 6

*Fox Television Stations, Inc. v. FCC*,
  280 F.3d 1027 (D.C. Cir. 2002) ........................................................................................... 4

*Grand Council of Crees v. FERC*,
  198 F.3d 950 (D.C. Cir. 2000) ............................................................................................. 1

*Heartland Reg'l Med. Ctr. v. Sebelius*,
  566 F.3d 193 (D.C. Cir. 2009) ............................................................................................. 2

*Mobil Oil Expl. & Producing Se., Inc. v. U.S.*,
  530 U.S. 604 (2000) ............................................................................................................. 7

*Monahan v. U.S. Dep't of Interior*,
  No. 04-CV-205-J, 2005 WL 8146103 (D. Wyo. May 17, 2005) ......................................... 7

*Rex Monahan*,
  161 IBLA 194 (2004)) .......................................................................................................... 6

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  255 F.Supp.3d 101 (D.D.C. 2017) ....................................................................................... 1

*\*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  282 F.Supp.3d 91 (D.D.C. 2017) .............................................................................. 2, 3, 4, 5

*U.S. Telecom Ass'n v. FBI*,
  276 F.3d 620 (D.C. Cir. 2002) ............................................................................................. 5

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ............................................................................................................. 6

*WildEarth Guardians v. Zinke*,
  368 F.Supp.3d 41 (D.D.C. 2019) .................................................................................... 2

**Statutes**

30 U.S.C. § 191 ............................................................................................................................. 5

30 U.S.C. § 226 ............................................................................................................................. 5

Wyo. Stat. Ann. §§ 39-14-203 through -204 ................................................................................ 6

**Rules**

*Rules, Wyo. Oil & Gas Conservation Comm'n* ch. 3, § 8 ................................................................ 5

**Regulations**

43 C.F.R. § 3162.3-1 ................................................................................................................. 5, 7

**INTRODUCTION**

On March 22, 2024, this Court granted in part and denied in part the Wilderness Society and Friends of the Earth's (the Groups') motion for summary judgment. (ECF No. 45). Consistent with this Court's order, the parties submitted a joint proposal to separately brief remedy. (ECF No. 49). Accordingly, the State of Wyoming respectfully submits this brief on the issue of remedy.[1]

The State respectfully requests this Court to remand the Environmental Assessment (EA) and Record of Decision (ROD) to the Bureau of Land Management (Bureau) without vacatur. Vacating the lease sale will significantly affect the people of Wyoming for issues that the Bureau can address on remand. The balance of equities strongly favors keeping the lease sales in place. Furthermore, the Bureau will most likely be able to substantiate its decision on remand.

Oil and gas development is a vital part of Wyoming's economy. The State benefits directly from the lease sale proceeds and indirectly from the taxes and royalties collected from production. Beyond the lease sale proceeds, oil and gas development contributes to employment and is a vital part of the economic base for many Wyoming communities.

**ARGUMENT**

A procedural injury requires a procedural remedy. The National Environmental Policy Act (NEPA) is a procedural statute "that 'does not impose substantive duties mandating particular results, but simply prescribes the necessary process for preventing uninformed – rather than unwise – agency action.'" *Grand Council of Crees v. FERC*, 198 F.3d 950, 959 (D.C. Cir. 2000) (citation omitted). Vacatur is an extreme remedy and may result in "serious consequences that a court should not lightly impose." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F.Supp.3d 101, 147 (D.D.C. 2017). "To determine whether to remand without vacatur, this court

---

[1] This brief regarding remedy does not constitute a waiver of appeal rights.

considers first, 'the seriousness of the [action's] deficiencies,' and, second, the 'likely disruptive consequences of vacatur.'" *See Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518 (D.C. Cir. 2020) (citation and internal quotation marks omitted) (alteration in original). Here, this Court should remand without vacatur because the Bureau could substantiate its decision on remand and the State and its residents would incur significant losses if the lease sale is vacated.

### A.     The Bureau can substantiate its decision on remand.

Here, the Bureau only needs to supplement its analysis and not redo it "from the ground up." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F.Supp.3d 91, 100 (D.D.C. 2017) (citation omitted). Vacatur is improper because the Bureau has already done the hard work of collecting data. *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) ("When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied-Signal* counsels remand without vacatur."); *see also Standing Rock*, 282 F.Supp.3d at 109 ("In light of the 'serious possibility' that the Corps will be able to substantiate its prior conclusions, the Court finds that vacatur is not the appropriate remedy in this case."). Instead of ignoring the impacts on groundwater, wildlife, and greenhouse gases, the Bureau included significant discussions of each. (*See, e.g.,* WY485713-26) (evaluating greenhouse gas emissions); (WY485726-29) (evaluating water resources); (WY485729-61) (evaluating sage-grouse impacts); (WY485762-85) (evaluating impacts to big game). This Court has previously determined that when violations are "merely of a failure to fully discuss the environmental effects of those lease sales" and "nothing in the record indicates that on remand the agency will necessarily fail to justify its decisions" vacatur is inappropriate. *WildEarth Guardians v. Zinke*, 368 F.Supp.3d 41, 84 (D.D.C. 2019).

The Bureau can substantiate its groundwater analysis on remand. In doing so, the Bureau can further elaborate on why the Groups' study and the trade associations' comments do not undermine the Bureau's reliance on regulatory compliance. Especially since this Court acknowledged that the Groups' study was not conclusive proof of regulatory noncompliance. (ECF No. 45 at 22). Like the court in *Standing Rock*, this Court did not find the study and the trade associations' comments an "insurmountable obstacle" to justifying the agency's decision but that the agency "'never said as much'" when claiming the reports were flawed or unreliable during litigation. *Compare Standing Rock*, 282 F.Supp.3d at 98 (citation omitted); (*with* ECF No. 45 at 22) ("Though not conclusive proof of regulatory noncompliance, they present credible evidence contrary to the assumption that the regulations are adequately enforced to protect all usable groundwater … the Bureau could not ignore this contradictory evidence. But that is exactly what it did[.]") (ellipsis and alteration added). As a result, this Court should also hold that while the Bureau "must exercise its judgment in analyzing [the Groups'] critiques" there is a "serious possibility that, in doing so, it will be able to substantiate the prior EA." *Standing Rock*, 282 F.Supp.3d at 99 (alteration added). Accordingly, the Bureau will likely justify its decision to lease on remand.

The Bureau can address impacts on sage-grouse and mule deer instead of relying on the Resource Management Plans (RMPs). This Court recognized that the Bureau's analysis evaluated the wildlife habitats affected by the lease sale in-detail. (*See, e.g.,* ECF No. 45 at 34, 39, 41). The Bureau can address this Court's concerns by making a new determination of impacts on remand by using the data already analyzed in the EA that post-dated the RMPs. (*See id.* at 42) ("Here, the Bureau was not making a *new* determination of how the development of such a small segment of habitat, which will be mitigated with lease stipulations, will likely impact these species. Rather, it

3

was claiming that the Bureau *already* assessed this sort of impact during the RMP phase.") (emphasis in original); (*see also id.* at 38) ("the Bureau must do more to justify its conclusion that the effects would be the same as those outlined in the RMPs and Plan Amendments … in light of intervening events that appear to have shaken the Bureau's confidence in those plans.") (ellipsis added). For mule deer in particular, this Court suggested that the Bureau would likely be able to substantiate its analysis on remand. (*Id.* at 43) ("The Court suspects BLM very well may conclude that the small magnitude of habitat affected, combined with the mitigation measures it imposed, provide assurance that the lease sales will not significantly impact big game.").

This Court even recognized that the Bureau can justify the failure to use social-cost estimates when comparing alternatives.

> It may well be that BLM believes the same methodological shortcomings that prevented it from using the SC-GHG tool to determine the 'significance' of the resulting emissions also limit the usefulness of the social-cost estimates in qualitatively comparing the alternatives under review and selecting its preferred option. That's a fine conclusion to reach if the Bureau can justify it. But it must show its work and explain its reasoning.

(*Id.* at 57). Because "there is a 'nontrivial likelihood'" that the Bureau "could justify" its decision on remand, the first required consideration supports remand without vacatur. *Bauer v. DeVos*, 332 F.Supp.3d 181, 186 (D.D.C. 2018) (citations omitted).

The high probability that the Bureau can justify the lease sale on remand indicates that vacatur is not appropriate. When the "first prong … supports remand without vacatur, the second prong 'is only barely relevant.'" *Standing Rock*, 282 F.Supp.3d at 108 (citation omitted) (ellipsis added). The D.C. Circuit has often refused to vacate a decision based on the first prong alone. *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1049 (D.C. Cir. 2002) ("though the disruptive consequences of vacatur might not be great, the probability that the Commission will be able to justify retaining the NTSO Rule is sufficiently high that vacatur of the Rule is not appropriate.");

4

*see also U.S. Telecom Ass'n v. FBI*, 276 F.3d 620, 627 (D.C. Cir. 2002) (focusing on the first prong to explain why vacatur is inappropriate).

**B.      Vacatur would result in disruptive impacts.**

Any vacatur of the lease sale would significantly harm the State of Wyoming. Courts "have repeatedly considered the economic implications of vacatur — including in cases addressing environmental harms." *Standing Rock*, 282 F.Supp.3d at 104; *see also All. for the Wild Rockies v. Savage*, 375 F.Supp.3d 1152, 1157 (D. Mont. 2019) ("economic impact is relevant to the question of whether to vacate on remand."). The State received approximately six million dollars in revenue from the June 2022 lease sale because the State is entitled to forty-eight percent of the total bids paid for parcels leased by the Bureau. 30 U.S.C. § 191(a), (b); (WY486130) (the June 2022 lease sale collected over thirteen million dollars in bids).

The lease sale also indirectly affects the State's revenue. After the lease sale, the Bureau and the State may approve the operator's application for permit to drill (APD). *See* 30 U.S.C. § 226(g) ("No permit to drill on an oil and gas lease issued under this chapter may be granted without the analysis and approval by the Secretary concerned of a plan of operations covering proposed surface-disturbing activities within the lease area."); *see also* 43 C.F.R. § 3162.3-1 (federal regulations regarding APDs); *Rules, Wyo. Oil & Gas Conservation Comm'n* ch. 3, § 8(a) ("Before any owner or operator shall spud in anticipation of drilling any well on fee, patented, state, or federal lands, or deepen/re-enter any such well(s) by drilling to a lower formation, such owner or operator shall file an [APD] with the Commission") (alteration added). Once the well starts producing, the State receives federal mineral royalties, severance taxes, and ad valorem taxes. (WY485785); *see also* 30 U.S.C. § 191(a), (b) (explaining the State also receives forty-eight percent of the rentals and federal royalties collected from oil and gas production); Wyo. Stat. Ann.

§§ 39-14-203 through -204 (Wyoming's severance tax on oil and gas produced within its borders). These taxes and royalties comprise a majority of State and local revenue.

Vacatur would significantly harm Wyoming's residents because resource development is important to the State's economy. Courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). As the Bureau itself recognized in the EA, "Wyoming, as well as many counties and communities within, rely on oil and gas development as an important part of their economic base." (WY485786). "In 2016, the mining sector supported 6% of employment and 12% of labor earnings statewide[.]" (WY485785). Overall, lease sales lead to positive socioeconomic outcomes for Wyoming communities and help support national energy demands. (WY485786) ("If none of the leases were offered, and subsequently sold, the employment, revenue, and purchasing opportunities associated with developing and producing wells on these leases would be foregone, as would the opportunity to provide oil and gas resources from these lease parcels to aid in meeting the energy demands."). Due to the oil and gas industry creating job opportunities in Wyoming, shutting down portions of it based on analysis that this Court indicated the Bureau could most likely substantiate on remand is against the public interest. *Dine Citizens Against Ruining Our Env't v. Jewell*, No. 15-cv-0209, 2015 WL 4997207, at *50 (D.N.M. Aug. 14, 2015) ("The oil-and-gas industry is an enormous job creator and economic engine in New Mexico, and shutting down portions of it based on speculation about unproven environmental harms is against the public interest.").

Against the significant harms to the State, its residents, and industry, the lease sale did not in-and-of-itself directly result in a significant environmental harm. The issuance of a lease is effectively the issuance of a contract. *Rex Monahan*, 161 IBLA 194, 210 (2004), *aff'd Monahan*

*v. U.S. Dep't of Interior,* No. 04-CV-205-J, 2005 WL 8146103 (D. Wyo. May 17, 2005). Instead of an immediate right to drill, a lease is "an *opportunity* to try to obtain exploration and development rights[.]" *Mobil Oil Expl. & Producing Se., Inc. v. U.S.*, 530 U.S. 604, 620 (2000) (emphasis in original) (alteration added). Under federal regulations, "[n]o drilling operations, nor surface disturbance preliminary thereto, may be commenced prior to" receiving an approved APD. 43 C.F.R. § 3162.3-1(c) (alteration added). Accordingly, until the Bureau issues an APD there is no development on the public lands in question.

## CONCLUSION

The June 2022 lease sale proceeds have already provided benefits to the State's residents. The loss of revenue from any vacatur of the lease sale would cause tangible harm to Wyoming's residents. Therefore, the State respectfully asks that this Court remand without vacatur. The Bureau can amend its EA to provide a full discussion of environmental impacts. However, rectifying the harm to Wyoming's residents is much harder.

Dated this 13th day of May, 2024.

/s/ Shannon Leininger
Shannon Leininger, WSB #8-6932
Assistant Attorney General
Travis Jordan, WSB # 7-5721
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
shannon.leininger@wyo.gov
travis.jordan@wyo.gov

*Attorneys for Intervenor-Defendant State of Wyoming*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of May, 2024, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Columbia and served on all parties using the CM/ECF system.

/s/ Shannon Leininger  
Shannon Leininger
