**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILDERNESS SOCIETY**, *et al.*, | |
| Plaintiffs, | |
| v. | |
| **DOUGLAS BURGUM**,[1] *et al.*, | Case No. 22-cv-1871 (CRC) |
| Defendants, | |
| and | |
| **STATE OF WYOMING**, *et al.*, | |
| Intervenor-Defendants. | |

**MEMORANDUM OPINION**

In June 2022, Plaintiffs Wilderness Society and Friends of the Earth (collectively, the "Conservation Groups") filed this lawsuit challenging the Bureau of Land Management's ("BLM") decision to auction almost 120,000 acres of public land in Wyoming for oil and gas development.  The Court awarded partial summary judgment to the Conservation Groups, concluding that BLM violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., when assessing the environmental impacts of future drilling on the land and explaining its decision to authorize the lease sale in light of the projected greenhouse gas emissions.  After a round of supplemental briefing on the proper remedy, the Court remanded the case to BLM and temporarily enjoined the agency from approving new drilling permits or authorizing new surface

---

[1] By substitution pursuant to Federal Rule of Civil Procedure 25(d).

disturbing activities, but it denied the Conservation Groups' request to vacate the agency's decision and cancel the leases at issue in the case.

The Conservation Groups now move for approximately $300,000 in attorney fees and expenses under the Equal Access to Justice Act ("EAJA") because they are a "prevailing party" in the litigation and BLM's position was not substantially justified. See 28 U.S.C. § 2412(d). The government does not dispute that the Conservation Groups are eligible for a fee award; it instead argues that they should receive approximately $154,000 because (1) certain time entries in the Conservation Groups' fee request are not reimbursable under the EAJA, and (2) the total award should be reduced to account for their relative lack of success in the case. For the reasons described below, the Court will award the Conservation Groups $170,016.37 in attorney fees and $200 in expenses.

## I.    Background

The Court assumes familiarity with its prior opinions recounting the factual and procedural background of this case. See Wilderness Soc'y v. U.S. Dep't of Interior (Wilderness I), No. 22-cv-1871 (CRC), 2024 WL 1241906 (D.D.C. Mar. 22, 2024); Wilderness Soc'y v. U.S. Dep't of Interior (Wilderness II), No. 22-cv-1871 (CRC), 2024 WL 3443754 (D.D.C. July 16, 2024). In short, BLM finalized lease sales for nearly 120,000 acres of land in Wyoming in June 2022. Wilderness I, 2024 WL 1241906, at *4. The Conservation Groups immediately filed this lawsuit, raising a plethora of challenges to the agency's environmental analysis and authorization of the lease sale under NEPA and the APA. Id. As the Court previously explained, the Conservation Groups' claims fell into four categories:

> First, the Conservation Groups alleged that BLM did not perform a sufficiently granular analysis of impacts to groundwater and ignored the proven possibility that inadequate well casing or hydraulic fracturing near usable water sources may cause contamination. Second, they claimed that the Bureau failed to take a hard look at

> effects on various wildlife—namely, the greater sage grouse . . . and the mule deer. Third, the groups maintained that [BLM's Wyoming field office] failed to consider a reasonable slate of alternatives, as NEPA requires, when authorizing such a large-scale sale that far outstripped what the other BLM field offices put up for auction around the same time.  And fourth, they claimed the Bureau failed to rationally address climate impacts when deciding to offer a lease sale of this magnitude.

Wilderness II, 2024 WL 3443754, at *1 (citations omitted).

After the parties filed cross-motions for summary judgment, the Court issued a "split decision."  Id. at *2.  First, the Court concluded that while BLM was not required to conduct the "fine-grained analysis" that the Conservation Groups demanded, the agency "fail[ed] to address credible evidence suggesting that there may be inadequate enforcement of the well-construction regulations on which it relied when finding no significant impact to groundwater."  Wilderness I, 2024 WL 1241906, at *5.  Second, the Court agreed that BLM failed to take a "hard look" at the lease sale's impact on wildlife because it "improperly relied" on an environmental assessment prepared during an earlier phase of the planning, leasing, and drilling process.  Id. at *14.  Third, the Court held that BLM adequately "consider[ed] a reasonable range of alternatives," and the agency "did not act arbitrarily by offering a significantly larger lease sale" in Wyoming than it did in other states.  Id. at *23.  Fourth, the Court determined that BLM "did not adequately explain how it considered the environmental effects of [greenhouse gas] emissions that, in its own telling, carry a hefty price tag in terms of social costs."  Id.

Because the agency "fell short of its obligations under NEPA and the APA in some respects," the Court ordered another round of briefing on the appropriate remedy.  Wilderness II, 2024 WL 3443754, at *2.  The Conservation Groups asked the Court to vacate the leases and the Record of Decision authorizing them, while BLM sought a remand without vacatur.  Id.  The Court agreed with BLM that vacatur was not warranted, as (1) there was a "serious possibility" that the agency could cure the relatively minor deficiencies in its analysis on remand, and

(2) setting aside the leases in the meantime could have disruptive effects.  Id. at *6.  Instead, the Court remanded the case to BLM and enjoined the agency "from approving new applications for a permit to drill or authorizing new surface disturbance on the lease parcels during the remand period."  Id.

The government appealed the Court's rulings, but it voluntarily dismissed the appeal a few days later.  See Mandate (ECF No. 68).  The Conservation Groups then timely moved for attorney fees and expenses under the EAJA, but they asked the Court to stay the briefing schedule while the parties engaged in settlement discussions.  See Pls.' Mot. for Attorney Fees and Expenses and Unopposed Mot. for Stay of Briefing (ECF No. 69) at 1–2.  After the parties' negotiations proved unsuccessful, the Conservation Groups renewed their motion for attorney fees and expenses.  See Pls.' Mot. for Attorney Fees and Expenses (ECF No. 74) ("Mot. for Attorney Fees").  The government agrees that the Conservation Groups are prevailing parties and eligible for a fee award, but it disputes the reasonableness of their request.  See Defs.' Opp'n to Pls.' Mot. for Attorney Fees and Expenses ("Opp'n") at 1.  The fee motion is now fully briefed.

## II.    Legal Standards

The EAJA allows plaintiffs to recover expenses in litigation against the federal government under certain circumstances.  Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 941 (D.C. Cir. 2005).  Specifically, it provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  A party is therefore eligible for fees, costs, and expenses under the EAJA if (1) the party was a "prevailing party"; (2) the government's position was not "substantially justified"; (3) no special circumstances make an award unjust; and (4) the party

4

satisfies the threshold eligibility requirements under 28 U.S.C. § 2412(d)(2)(B).  Ctr. for Food Safety v. Burwell, 126 F. Supp. 3d 114, 119 (D.D.C. 2015) (citation omitted); see also SecurityPoint Holdings, Inc. v. TSA, 836 F.3d 32, 35–36 (D.C. Cir. 2016).

If a party is eligible for a fee award, the Court may award "reasonable" fees while weeding out "excessive, redundant, or otherwise unnecessary" charges.  Wash. All. of Tech. Workers v. DHS, 857 F.3d 907, 910 (D.C. Cir. 2017) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983)).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley, 461 U.S. at 433; see also Murray v. Weinberger, 741 F.2d 1423, 1427 (D.C. Cir. 1984) ("[A]ny fee-setting inquiry must begin with the lodestar figure.").  After determining the lodestar figure, the Court may then "adjust the fee award to reflect the relative degree of the plaintiff's success."  Animal Legal Def. Fund, Inc. v. Perdue, 292 F. Supp. 3d 315, 317–18 (D.D.C. 2018) (Cooper, J.) (citing George Hyman Constr. Co. v. Brooks, 963 F.2d 1532, 1535 (D.C. Cir. 1992)).  Ultimately, the Court "has discretion in determining the amount of a fee award."  Hensley, 461 U.S. at 437; see also Okla. Aerotronics, Inc. v. United States, 943 F.2d 1344, 1347 (D.C. Cir. 1991) ("[T]he determination of how much to trim from a claim for fees is committed to the court's discretion.").

## III.  Analysis

The Conservation Groups seek $288,616.62 in fees and $15,200 in expenses.  See Pl.'s Reply in Supp. of Mot. for Attorney Fees and Expenses ("Reply Br.") at 23; Declaration of Alexandra O. Schluntz (ECF No. 79-1) ("Schluntz Decl."), Ex. A at 90.  The government does not dispute that the Conservation Groups are prevailing parties and otherwise eligible for fees under the EAJA.  See Opp'n at 1.  Instead, it asks the Court to apply three sets of reductions to

the fee award.  First, the government claims that the total hours expended during the litigation "should be reduced to eliminate time that is not compensable under [the] EAJA, as well as time that is excessive or duplicative."  Id. at 5.  Second, the government submits that the Conservation Groups' fee award should be reduced wholesale because they "succeeded on only some of their claims" at summary judgment stage and "did not obtain their desired result" at the remedy stage. Id. at 13, 16.  Third, the government asserts that the expenses sought by the Conservation Groups—including expert fees and the cost of *pro hac vice* applications—are not compensable under the EAJA.  Id. at 18–21.  After making these reductions, the government requests that the Court trim the Conservation Groups' request to $154,410.39.  Id. at 21.

A.  Deductions for Non-Compensable Time

The government first asks the Court to deduct specific categories of tasks in the Conservation Groups' itemized statement of hours expended during the litigation.  See Declaration of Luther L. Hajek (ECF No. 77-1) ("Hajek Decl.") ¶¶ 4–9.  The Court addresses each category in turn.

1. *Clerical Tasks*

The first objection to the Conservation Groups' fee request encompasses 61.20 hours— totaling $13,784.86 in fees—that the government labels as "clerical tasks."[2]  Opp'n at 7; Hajek Decl., Ex. 2.  The government submits that these tasks, including correspondence about the docket and trips to the post office, are not compensable under the EAJA.  Opp'n at 6.  The Conservation Groups retort that almost all of the time challenged by the government "was spent

---

[2] The government's opposition brief states that the proposed deductions total $13,748.86 in fees, Opp'n at 7, while its corresponding spreadsheet lists the total as $13,784.86, Hajek Decl., Ex. 2.  The Court's calculations align with the spreadsheet's total.

by a paralegal rather than by attorneys," and "[t]he vast majority of the entries . . . are non-clerical tasks, which the Court has discretion to award." Reply Br. at 2–3.

The D.C. Circuit has long recognized that "paralegals and law clerks are to be compensated at their market rates." In re Olson, 884 F.2d 1415, 1426 (D.C. Cir. 1989) (per curiam) (citation omitted); see also Missouri v. Jenkins, 491 U.S. 274, 285 (1989) (recognizing as "self-evident" that a "'reasonable attorney's fee' . . . should compensate the work of paralegals"). But to be recoverable under the EAJA, the paralegal's work "must be legal in nature." Cobell v. Norton, 407 F. Supp. 2d 140, 156 (D.D.C. 2005). Purely "clerical billings," by contrast, are not included in a fee award because "such services are generally considered within the overhead component of a lawyer's fee." Lopez v. District of Columbia, 383 F. Supp. 2d 18, 25 (D.D.C. 2005) (citation and internal quotation marks omitted); see also Jenkins, 491 U.S. at 288 n.10 ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). While tasks such as filing briefs are typically considered to be "clerical," see Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 973 (D.C. Cir. 2004), other tasks such as cite-checking and creating case binders may be "tasks of a legal nature," Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veteran Affs., 10 F. Supp. 3d 21, 28 (D.D.C. 2013). Perhaps foreseeably, "the classification of certain tasks as 'clerical' and others as 'legal' is somewhat subjective." Driscoll v. George Washington Univ., 55 F. Supp. 3d 106, 117 (D.D.C. 2014).

In assessing the government's objections, the Court has attempted to distinguish "clerical tasks that could be completed by 'librarians, clerical personnel[,] and other support staff' from legal and factual tasks that were best completed by 'law clerks and paralegals.'" Id. (alteration in original) (citing Dickens v. Friendship-Edison P.C.S., 724 F. Supp. 2d 113, 124 (D.D.C. 2010)).

7

After sorting through each time entry flagged by the government, the Court concludes that "most of the entries . . . are not in fact clerical because they require familiarity with the facts and law of the case." Id. (citing Cobell, 407 F. Supp. 2d at 164). For example, a November 2023 entry indicates that a paralegal e-mailed the Conservation Groups' attorneys about a Court order requesting hyperlinks in the parties' briefs, see Nov. 22, 2023 Min. Order, then "worked on [a] revised index" for the attorneys' review, see Hajek Decl., Ex. 2 at 3. Because this sort of task requires familiarity with the docket, the applicable court rules, and the administrative record, it is "legal in nature." Cobell, 407 F. Supp. 2d at 156.

By contrast, the government aptly characterizes a few entries as "clerical." For example, a July 2022 entry states that a paralegal made a "[t]rip to [the] post office for certified mailing supplies for letters to all Wyoming leaseholders from [the] June 2022 lease sale." Hajek Decl., Ex. 2 at 1. However valuable that outing may have been, it is not compensable under the EAJA. See Driscoll, 55 F. Supp. 3d at 117 (noting that "preparing shipping labels" is a non-compensable clerical task). In total, the Court will deduct 12.9 hours—or $2,952.90 in fees—for clerical tasks.[3]

    *2. Block Billing*

The government next argues that the Conservation Groups' fee award should be reduced because they occasionally engaged in "block billing" that "makes it impossible to determine how much time was spent on compensable versus non-compensable tasks." Opp'n at 8. The

---

[3] The deducted "clerical" work includes time entries on July 22, 2022 (Farouche), August 26, 2022 (Greer), August 30, 2022 (Farouche), September 15, 2022 (Farouche), April 24, 2024 (Farouche), April 29, 2024 (Farouche), April 30, 2024 (Farouche), and June 18, 2024 (Farouche). See Hajek Decl., Ex. 2. The Conservation Groups voluntarily deducted three additional entries as "clerical work." See Schluntz Decl., Ex. A at 25, 34.

Conservation Groups counter that the government needlessly "quibble[s] over a few isolated entries" that include "interrelated" tasks pertinent to the litigation.  Reply Br. at 7.

When a party lumps multiple tasks into a single time entry, the Court "is left to approximate the amount of time which should be allocated to each task."  Olson, 884 F.2d at 1428.  This practice of "block billing" is disfavored because it "prevents [the Court] from verifying that [the party seeking fees] deducted the proper amount of time."  Role Models, 353 F.3d at 971.  Accordingly, courts "often reduce fee awards" that include block-billed time entries.  Tridico v. District of Columbia, 235 F. Supp. 3d 100, 109 (D.D.C. 2017) (collecting cases).  But a "reduction may not be warranted" when block billing is "used infrequently."  Id. (citing Fitts v. Unum Life Ins. Co. of Am., 680 F.Supp.2d 38, 42 (D.D.C. 2010)); see also Hernandez v. Chipotle Mexican Grill, Inc., 257 F. Supp. 3d 100, 112 (D.D.C. 2017) ("Where the use of block billing by a party who is completely successful is infrequent, a reduction may not be warranted at all.").

In this case, the government identifies eight entries totaling 20.6 hours—or $4,471.21 in fees—that are purportedly block billed and recommends a 50 percent reduction of those fees. Opp'n at 8 (citing Role Models, 353 F.3d at 973); Hajek Decl., Ex. 3 at 2.  The Court concludes that while most of the flagged entries are technically "block billed," only one contains a purely "clerical task" that is not compensable under the EAJA.  Specifically, this August 30, 2022 entry indicates that, among other tasks, a paralegal checked the U.S. Postal Service website to "retrieve outstanding certified mail online confirmations[.]"  Hajek Decl., Ex. 3 at 1.  The Court will therefore reduce that entry by five percent and deduct $36.40 from the Conservation Groups' fee award.  See Fitts, 680 F. Supp. 2d at 42 (concluding that a "smaller reduction is appropriate" when the "relatively small fraction of [block billed] entries is not comparable to the pervasive

problems identified in Role Models"); Smith v. District of Columbia, 466 F. Supp. 2d 151, 158 (D.D.C. 2006) (declining to deduct a fee award in part because "[m]any of the specific items that the [defendant] claims are vague, inadequate or unclear because of block billing are of relatively minor significance").

### 3. Letters to Lessees

The government also objects to the 30 hours—equating to $6,875.09 in fees—that the Conservation Groups spent preparing letters to lessees of the land at issue in this case. It observes that since "none of the lessees chose to become involved in the case," corresponding with them "was entirely unnecessary." Opp'n at 8. In response, the Conservation Groups assert that (1) some of the flagged entries related to substantive research used in their briefing, and (2) the letters to lessees "were a sensible and necessary step toward seeking remedies in this case." Reply Br. at 8.

The Conservation Groups have adequately justified their decision to notify lessees about this lawsuit as a reasonable litigation strategy. See Hensley, 461 U.S. at 433 (recognizing that the lodestar calculation includes "hours *reasonably expended* on the litigation" (emphasis added)). They correctly note that in a similar case challenging lease sales by BLM, a lessee belatedly moved to intervene in the district court proceedings, then argued on appeal that the district court impermissibly vacated the lease sale before the lessee joined the litigation. See Mont. Wildlife Fed'n v. Haaland, 127 F.4th 1, 25–26, 47 (9th Cir. 2025). To "head off" a similar argument and thereby "protect their right to seek remedies," the Conservation Groups notified the lessees from the June 2022 lease sale at the outset of this case. Reply Br. at 8. Because "the charges incurred were reasonable aspects of the litigation," Alfonso v. District of Columbia, 464

F. Supp. 2d 1, 5 (D.D.C. 2006), the Court will not deduct the time spent preparing letters to the affected lessees.[4]

### 4. Administrative Proceedings

Next, the government objects to the time that the Conservation Groups spent during the protest period preceding BLM's leasing decision in June 2022. In its view, "[t]ime spent on administrative proceedings that pre-date the challenged agency action is not compensable." Opp'n at 9. The Conservation Groups submit that they may recover fees because "the time spent on the protest period necessarily included careful investigation of the facts and the record," which they "would have needed to perform, whether during the protest period or later, in order to effectively prosecute this case." Reply Br. at 9.

Recall that under the EAJA, a "prevailing party" is entitled to "fees and other expenses . . . incurred by that party in any *civil action* . . . including proceedings for judicial review of agency action[.]" 28 U.S.C. § 2412(d)(1)(A) (emphasis added); see Sullivan v. Hudson, 490 U.S. 877, 883–84 (1989). A "civil action" ordinarily refers to proceedings in a judicial court, not proceedings before an agency. See W. Watersheds Project v. U.S. Dep't of the Interior, 677 F.3d 922, 926 (9th Cir. 2012); Levernier Const., Inc. v. United States, 947 F.2d 497, 503 (Fed. Cir. 1991). However, the Supreme Court has recognized that in cases "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees," a court may award fees and expenses incurred during those proceedings. Hudson, 490 U.S. at 888. In Hudson, for example, the Court held that when a district court remands a Social Security case

---

[4] To the extent the entries flagged by the government related to "substantive research that was used during briefing," Reply Br. at 8, the Court would reach the same conclusion.

to an agency but retains jurisdiction over the matter pending the agency's decision, the plaintiff may collect fees accumulated during the subsequent administrative proceedings.  Id. at 892.  But Hudson is a limited exception:  It only applies to a "narrow class of qualifying administrative proceedings" in which "the district court retains jurisdiction of the civil action" *after* ordering a remand.  Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991); see Shalala v. Schaefer, 509 U.S. 292, 299–300 (1993); Full Gospel Portland Church v. Thornburgh, 927 F.2d 628, 631–33 (D.C. Cir. 1991) (per curiam).

In this case, the contested time entries occurred during the protest period *before* BLM finalized the lease sale.  See Hajek Decl., Ex. 5 at 1.  While BLM's response to the protests— that is, its decision to finalize the sale—may have "sparked the civil action," the protest period itself was "not in any generally accepted sense *part of* the case filed in court."  Full Gospel, 927 F.2d at 631–32 (holding that plaintiffs may not recover fees for pre- or post-litigation visa proceedings before the Immigration and Naturalization Service).  The Conservation Groups claim that their efforts during the protest period relate to this litigation because they "investigat[ed] the facts and the record."  Reply Br. at 9; see also id. at 11 ("Conservation Groups' counsel spent time working on protests that were specific to this case, outlining the very legal arguments that would form the basis of the complaint.").  But similar work is done in nearly all cases challenging agency action.  By the Conservation Groups' logic, essentially any "prevailing party" that participated in the administrative process would be able to recover fees accrued during pre-litigation agency proceedings.

The Supreme Court "has stated consistently that fees for administrative proceedings can only be awarded under § 2412(d)(1)(A) if the district court ordered the further proceedings, and the district court action remained pending until the conclusion of the administrative

proceedings." W. Watersheds Project, 677 F.3d at 926 (citing Melkonyan, 501 U.S. at 96–97, and Shalala, 509 U.S. at 299–300).[5] Because that exception is inapplicable here, the Court will sustain the government's objection and deduct 9.70 hours—or $2,266.70 in fees—from the Conservation Groups' fee request. See Hajek Decl., Ex. 5 at 1.

        5.  *Travel*

Finally, the government objects to the time that attorney Alexandra Schluntz spent traveling to the summary judgment hearing.[6] See Opp'n at 11. Because Ms. Schluntz's co-counsel argued on behalf of the Conservation Groups, the government submits that her attendance was "not necessary." Id.

The Court disagrees. Given the complexity of the case and the number of issues raised in the parties' briefing, it was entirely reasonable for the Conservation Groups to send two attorneys to the summary judgment hearing, even if only one of them argued before the Court. See Hensley, 461 U.S. at 434 ("In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (citation omitted)). Accordingly, the Court denies the government's request to deduct 12.30 hours—or

---

[5] The Conservation Groups assert that Western Watersheds Project is "inapplicable to APA record review litigation such as this case." Reply Br. at 10. But that case involved a conservation group's APA challenge to a ruling by the Interior Board of Land Appeals, which concluded that a BLM final decision about grazing permits did not violate NEPA. W. Watersheds Project, 677 F.3d at 924–25.

[6] The government also requests a partial deduction for a time entry by attorney Michael Freeman that includes both time traveling to the hearing and time spent at the hearing itself. See Opp'n at 10–11 (citing Blackman v. District of Columbia, 397 F. Supp. 2d 12, 15 (D.D.C. 2005)). The Conservation Groups' final fee request incorporates the government's proposed deduction, so the Court need not address it here. See Schluntz Decl., Ex. A at 55.

$3,059.38 in fees—for Ms. Schluntz's travel and attendance at the hearing.  See Hajek Decl., Ex. 7.

* * *

Before moving on to the government's proposed wholesale reductions, the Court pauses briefly to check its math.  The Conservation Groups seek $288,616.62 in fees.  See Reply Br. at 23; Schluntz Decl., Ex. A at 90.  That request consists of $201,644.22 from the "merits" phase of the litigation; $53,376.60 from the "remedy" phase of the litigation; and $33,595.80 in "fees on fees."[7]  See generally Schluntz Decl., Ex. A.  After the deductions described above—which total $5,256.00—the Conservation Groups' request from the "merits" phase of the litigation is reduced to $196,388.22, while the "remedy" and "fees on fees" amounts remain the same.

B.  Reductions to Reflect Degree of Success

After harpooning specific time entries in the Conservation Groups' fee request, the government seeks a trawling reduction of the overall fee award "to account for the degree of success obtained in the litigation."  Opp'n at 12.  Specifically, the government proposes a 25 percent reduction of fees from the "merits" phase of the litigation and a 100 percent reduction of fees from the "remedy" phase.  Id. at 16–17.  The Conservation Groups submit that no reduction is warranted, as they "prevailed on several claims" and "accomplished their mission" through this lawsuit.  Reply Br. at 13, 17 (citation and internal quotation marks omitted).

As explained above, the "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley, 461 U.S. at 433.  But the lodestar calculation "does not end the inquiry," as the

---

[7] For purposes of the Conservation Groups' motion for attorney fees and expenses, the "merits" phase of the litigation includes any time entries not expressly labeled as part of the "remedy" or "fees on fees" phases of the litigation.

14

Court may adjust a party's fee award upward or downward to reflect the "results obtained" during the litigation.  Id. at 434.  When the party "succeeded on only some of [its] claims for relief," the Court must consider two questions:  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [it] succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Id.; see also Animal Legal Def. Fund, 292 F. Supp. 3d at 319.

The first question turns on whether a plaintiff's successful claims and unsuccessful claims "involve a common core of facts or [are] based on related legal theories."  F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 599 (D.C. Cir. 1996) (alteration in original) (quoting Hensley, 461 U.S. at 435).  If the claims are related, then "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  SecurityPoint, 836 F.3d at 40 (quoting Hensley, 461 U.S. at 440).  By contrast, "[h]ours spent on unsuccessful claims that are 'distinct in all respects from' the successful ones should be excised."  Id. (quoting Hensley, 461 U.S. at 440).

The second question considers whether the plaintiff "achieved only partial or limited success."  Hensley, 461 U.S. at 436.  Even if the claims were "interrelated, nonfrivolous, and raised in good faith," the Court has discretion to reduce a fee award "to account for [the plaintiff's] limited success" in the lawsuit.  Id. at 436–37; see also F.J. Vollmer, 102 F.3d at 599 (instructing courts to "proportion fees" based on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" (quoting Hensley, 461 U.S. at 435)).  For example, a fee reduction may be appropriate if the result of the case "fall[s] short of matching [the plaintiff's] efforts," even when the plaintiff "won a significant victory" during the litigation.  SecurityPoint, 836 F.3d at 41.

The government's two-part proposal implicates both questions.  First, it proposes a 25 percent reduction to the "merits" phase fee award because the Conservation Groups "succeeded on only some of their claims."  Opp'n at 13; see also id. at 14 ("From a purely numerical standpoint, Plaintiffs prevailed on four out of nine claims.").  Second, it proposes a 100 percent reduction to the "remedy" phase fee award because the Conservation Groups "did not obtain the relief they sought."  Id. at 16; see also id. at 16–17 ("Because the only relief awarded was volunteered by Defendants, Plaintiffs should not be entitled to fees for the remedy phase.").  If the Court applied the government's proposal to the subtotals listed above, the Conservation Groups would be awarded $180,886.97, consisting of $147,291.17 for the "merits" phase, $0 for the "remedy" phase, and $33,595.80 in "fees on fees."

The Court will take a different path but arrive at a similar result.  As an initial matter, the Court will not reduce the fee award simply because some claims were successful and others were not.  The Conservation Groups raised several arguments in their summary judgment briefing, but they only pursued "one claim for relief": the invalidity of the lease sale.  Am. Petroleum Inst. v. EPA, 72 F.3d 907, 911 (D.C. Cir. 1996) (concluding that Hensley "has no applicability" when a plaintiff does not raise "separate claims," but rather "separate arguments in support of the same claim").  Those arguments "involve[d] a common core of facts" and were generally "based on related legal theories."  Hensley, 461 U.S. at 435.  For example, the Conservation Groups argued that BLM violated NEPA because the agency "failed to rationally address the climate impacts of its leasing decision."  Wilderness I, 2024 WL 1241906, at *23; Mem. in Supp. of Pls.' Mot for Summ. J. (ECF No. 27-2) at 40–45.  While the Court found only one of their three arguments persuasive, it is their "overall success, and not the number of counts [they] prevail[] on, that determines the amount of fees [they are] entitled to."  Goos v. Nat'l Ass'n of Realtors, 68 F.3d

16

1380, 1384 (D.C. Cir. 1995).[8]  Accordingly, the Court must turn to "the significance of the overall relief obtained by [the Conservation Groups] in relation to the hours reasonably expended on the litigation."  Hensley, 461 U.S. at 435.

On this second question, the Court agrees that a reduction of the Conservation Groups' fee award is appropriate in light of their limited success.  Recall that the Conservation Groups asked the Court to "'return the parties to the pre-lease sale status quo' by vacating the leases and the Record of Decision authorizing them."  Wilderness II, 2024 WL 3443754, at *2 (citation omitted).  After all, vacatur is the "presumptively appropriate remedy" when an agency action violates NEPA.  Id. (quoting Sierra Club v. Van Antwerp, 719 F. Supp. 2d 77, 78 (D.D.C. 2010)).  But notwithstanding this default rule, the Court declined to grant the Conservation Groups' requested relief.  See id. at 6.  The Court explained that it rejected their "more expansive critiques" of BLM's environmental analysis, and they only prevailed on "narrower issue[s]."  Id. at 4.  The Court "harbor[ed] little doubt" that BLM could "correct [its] missteps on remand and end up in the same place," so it remanded the case without vacatur.  Id.  Because the Conservation Groups did not obtain "the ultimate ruling [they] sought," the Court concludes that a 40 percent reduction to their fee award "fairly accounts for [their] overall level of success in the litigation."  Animal Legal Def. Fund, 292 F. Supp. 3d at 320 (reducing a fee award by 50 percent because the Court only agreed with one of the plaintiff's two claims and did not grant the relief sought).  Applying the 40 percent reduction to all three phases of the litigation, the Court

---

[8] Still, the Court retains discretion to reduce a fee award when a prevailing party increases the cost of litigation by raising an unreasonable number of claims in support of its requested relief.  See Goos, 68 F.3d at 1387 ("Hensley by no means entitles plaintiffs to reimbursement of their entire fees if they pursue multifarious and marginal claims.  And where the pursuit of multiple claims inflates the total hours beyond what is reasonable for the litigation, a reduction is clearly appropriate." (footnote omitted)).

awards $170,016.37 in fees.[9]  See INS v. Jean, 496 U.S. 154, 163 n.10 ("[F]ees for fee litigation

should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.");

EPIC v. DEA, 266 F. Supp. 3d 162, 173–74 (D.D.C. 2017) (Cooper, J.) (reducing a "fees on

fees" award proportionally pursuant to "the methodology employed by many [courts] in this

district").

   C.  Expenses

   In addition to attorney fees, the Conservation Groups also seek to recover (1) $15,000 in

expert expenses, and (2) $200 in *pro hac vice* application fees.  Mot. for Attorney Fees at 9–11.

The government asserts that neither set of expenses is compensable.  See Opp'n at 18–21.

   1.  *Expert Expenses*

   The Conservation Groups first request the costs associated with the preparation of the

"Tisherman Study," an expert report cited by both the Conservation Groups and the Court at the

summary judgment stage.  See Wilderness I, 2024 WL 1241906, at *10–11 (noting that the

Tisherman Study "call[s] into question BLM's contention that federal and state regulations

adequately protect underground drinking water from contamination").  The government contends

that the expenses associated with Tisherman Study are not recoverable because (1) the study was

prepared during the administrative proceedings prior to this litigation, and (2) the Conservation

Groups cannot recover expert fees when the government did not retain its own expert.  Opp'n at

18–20 (citing 28 U.S.C. § 2412(d)(2)(A)(i)).

   The Court agrees that the Conservation Groups cannot recover expenses incurred during

the protest period before BLM finalized the lease sale.  To be sure, the EAJA's definition of

---

[9] The $170,016.37 figure consists of $117,832.93 from the "merits" phase of the litigation; $32,025.96 from the "remedy" phase; and $20,157.48 in "fees on fees."

"fees and other expenses" includes "the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case."  28 U.S.C. § 2412(d)(2)(A).  But as described above, a party's "fees and other expenses" are only compensable if they were "incurred by that party in any civil action[.]"  Id. § 2412(d)(1)(A).  The pre-litigation administrative proceedings—including the protest period— were not "*part of* the case filed in court," Full Gospel, 927 F.2d at 632, and the Conservation Groups offer no controlling precedent to suggest otherwise.[10]  Accordingly, the Court declines to award expenses for the Tisherman Study.

    *2.* Pro Hac Vice *Fees*

The Conservation Groups also seek $200 for the cost of two *pro hac vice* applications to this Court.  See Mot. for Attorney Fees at 10.  The government again objects, noting that (1) the Conservation Groups' request for *pro hac vice* fees in their Bill of Costs was denied by the Clerk of the Court, and (2) the cost of filing applications for admission to the bar are not compensable.  Opp'n at 20–21.

The Court will award $200 in expenses for the *pro hac vice* applications.  First, the government offers no authority for the proposition that a plaintiff "should not be permitted to seeks costs under [the] EAJA that were previously denied" under 28 U.S.C. § 1920.  Id. at 20.  Second, the government correct notes that the D.C. Circuit has "assume[d] that a Washington law firm offering itself as a specialist in federal court litigation would treat the cost of joining the bar of th[at] court as an expense of doing business not chargeable to clients—much less to the

---

[10] Indeed, the Conservation Groups' primary citation does not support their position either.  See New Mexico ex rel. Richardson v. NLM, No. 05-cv-460 (BB), 2011 WL 13273079, at *8 (D.N.M. May 25, 2011) (concluding that an expert's professional services, rendered *after* BLM approved the relevant Record of Decision, were compensable under the EAJA).

federal government[.]"  Role Models, 353 F.3d at 973.  But that case is inapposite; the

Conservation Groups' counsel are not based in the District of Columbia, and their *pro hac vice*

applications only apply to this litigation.  Under these circumstances, *pro hac vice* application

fees are recoverable under the EAJA.  See 28 U.S.C. § 2412(d)(2)(A); Osterweil v. Bartlett, 92

F. Supp. 3d 14, 37 (N.D.N.Y. 2015).

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part [74] Plaintiffs'

Motion for Attorney Fees and Expenses.  A separate Order shall accompany this memorandum

opinion.

 

CHRISTOPHER R. COOPER
United States District Judge

Date:  March 19, 2026

20